No. 70,018

ANTHONY D. CHILES, *Petitioner*, v. STATE OF KANSAS, *Respondent.*
(869 P.2d 707)

Opinion filed March 4, 1994.

*Rebecca E. Woodman,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, *Reid T. Nelson,* special assistant appellate defender, *Rick Kittel,* assistant appellate defender, and *M. Kristine Paredes,* assistant appellate defender, were with her on the brief for petitioner.

*John J. Knoll,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for respondent.

The opinion of the court was delivered by

ABBOTT, J.: Anthony D. Chiles filed a petition for writ of mandamus and quo warranto, naming the State of Kansas the respondent in this action. The appellate defender was appointed to represent Chiles. The case involves the limited retroactivity provision (K.S.A. 1993 Supp. 21-4724[b][1]) of the new Kansas Sentencing Guidelines Act. Chiles does not fall within the limited retroactivity provision of the new law and, therefore, seeks an order from this court requiring the State to apply the retroactivity provision to him. If the provision is applied to Chiles, he may be eligible to be released from prison.

In 1978, Chiles was convicted of aggravated robbery, K.S.A. 21-3427, unlawful possession of a firearm, K.S.A. 21-4204, and aggravated battery, K.S.A. 21-3414. He was sentenced to 30 years to life for aggravated robbery, 1 to 10 years for unlawful possession of a firearm, and 10 to 40 years for aggravated battery. The sentences were to run concurrently for a controlling term of 30 years to life. At the time of sentencing, Chiles had one prior conviction for aggravated robbery, a person felony. Chiles is African-American. He makes one argument that applies to African-Americans and other minorities and separate arguments that apply to all prisoners.

K.S.A. 1993 Supp. 21-4724(b)(1) provides in relevant part:

"Except as provided in subsection (d), persons who committed crimes which would be classified in a presumptive nonimprisonment grid block on either sentencing grid, in grid blocks 5-H, 5-I or 6-G of the nondrug grid or in grid blocks 3-H or 3-I of the drug grid, pursuant to the provisions of subsection (c) of section 5 of chapter 239 of the 1992 Session Laws of Kansas and amendments thereto, if sentenced pursuant to the Kansas sentencing guidelines act, and were sentenced prior to July 1, 1993, shall have their sentences modified according to the provisions specified in the Kansas sentencing guidelines act."

Chiles does not fall within this provision and is therefore not eligible to have his controlling sentence modified under the new Act because the severity level of the crime of aggravated robbery places the sentence for that crime in a presumptive imprisonment grid block. Under the Kansas Sentencing Guidelines Act, aggravated robbery is a severity level 3, person felony (K.S.A. 1993 Supp. 21-3427), aggravated battery is a severity level 4 to severity

level 8, person felony depending upon the specific facts of the case (K.S.A. 1993 Supp. 21-3414), and unlawful possession of a firearm as in Chiles' case is a severity level 8, nonperson felony (K.S.A. 1993 Supp. 21-4204[d]).

Also under the Act, a person with one prior felony conviction at the time of sentencing has a criminal history category of "D." (K.S.A. 1993 Supp. 21-4709). The sentencing grid for nondrug offenses establishes a sentence of 78 months in a typical case for a defendant who has been convicted of a severity level 3 offense and who has a criminal history record of "D," *i.e.*, one prior person felony. (K.S.A. 1993 Supp. 21-4704).

According to Chiles, and the State does not dispute it, a term of imprisonment of 78 months under the Kansas Sentencing Guidelines Act would have resulted in his release from prison in 1984. As Chiles points out, he stands to gain much from a retroactive application of the sentencing guidelines to him.

Chiles contends that his exclusion from the retroactivity provision of the Act is the result of an arbitrary classification which bears no relationship to the purpose of the retroactivity legislation and thus violates the Equal Protection Clause of the 14th Amendment to the United States Constitution and § 1 of the Kansas Constitution Bill of Rights.

"The various levels of scrutiny employed in determining whether a statutory scheme violates equal protection guarantees recently were reviewed by the court in *Stephenson v. Sugar Creek Packing*, 250 Kan. 768, 774-75, 830 P.2d 41 (1992):

'As quoted in *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 613, 576 P.2d 221 (1978), the United States Supreme Court has described the concept of "equal protection" as one which "emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." *Ross v. Moffitt*, 417 U.S. 600, 609, 41 L. Ed. 2d 341, 94 S. Ct. 2437 (1974). Whether or not the legislation passes constitutional muster depends on the relationship borne by the challenged classification to the objective sought by its creation. . . .

'The examination of the relationship between the classification and the objective has become quite formalized. The United States Supreme Court articulates and applies three degrees of scrutiny when examining the relationship. The various levels of scrutiny were reviewed by this court in *Farley v. Engelken*, 241 Kan. 663, 669-70, 740 P.2d 1058 (1987).

'The least strict scrutiny is referred to as the "rational basis" test. Relevance is the only relationship required between the classification and the objective. In *McGowan v. Maryland*, 366 U.S. 420, 425, 6 L. Ed. 2d 393,

81 S. Ct. 1101 (1961), it was explained that "[t]he constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective." Insofar as the objective is concerned, "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." 366 U.S. at 426. Thus, it appears that the legislature's purpose in creating the classification need not be established. The classification must, however, bear a rational relationship to a legitimate objective. As noted by Justice Marshall in his dissent in *Lyng v. Automobile Workers*, 485 U.S. 360, 375, 99 L. Ed. 2d 380, 108 S. Ct. 1184 (1988):

' "The Court fails to note, however, that this standard of review, although deferential, " 'is not a toothless one.' " *Mathews v. De Castro*, 429 U.S. 181, 185 (1976), quoting *Mathews v. Lucas*, 427 U.S. 495, 510 (1976). The rational-basis test contains two substantive limitations on legislative choice: legislative enactments must implicate legitimate goals, and the means chosen by the legislature must bear a rational relationship to those goals. In an alternative formulation, the Court has explained that these limitations amount to a prescription that " 'all persons similarly situated should be treated alike.' "

'The intermediate level of scrutiny is termed "heightened scrutiny." *Farley v. Engelken*, 241 Kan. at 669. "It requires the statutory classification to substantially further a legitimate legislative purpose." 241 Kan. at 669. Another, perhaps stronger, statement of the heightened scrutiny test is that the classification "must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig v. Boren*, 429 U.S. 190, 197, 50 L. Ed. 2d 397, 97 S. Ct. 451 (1976).

'The highest level of scrutiny requires that the defendant demonstrate "that the classification is necessary to serve a compelling state interest." *Farley v. Engelken*, 241 Kan. at 670. This "strict scrutiny" test has been applied by the United States Supreme Court in cases involving classifications such as race and fundamental rights guaranteed by the federal Constitution.' " *Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 1016-17, 850 P.2d 773 (1993).

Chiles first argues that the legislative history of the Sentencing Guidelines Act clearly shows that the purpose of legislating retroactivity is to remedy the effects of past racial and geographical discrimination in sentencing and that a strict scrutiny test is required. Chiles fails, however, to cite any portion of the legislation which would support his conclusion regarding the purpose of the limited retroactivity provision. The legislative history he recounts does not clearly indicate that the only purpose of retroactivity is the elimination of past racial and geographical discrimination in sentencing.

Chiles notes he is an African-American. He claims, without supporting evidence or explanation of any kind, that he, specifically, was discriminated against when sentenced under the prior sentencing system for his 1978 convictions. He claims it is unconstitutional to exclude him, a member of a racial minority and suspect class, from the benefits of retroactive application of the sentencing guidelines when the guidelines were legislated to correct the racial disparity he and others have suffered. He argues that a strict scrutiny analysis is required because this is a classification involving race and that the State must show both a compelling governmental interest and that the classification is truly necessary to withstand such an analysis.

Chiles then claims that, in light of the purpose of the retroactive application of the new sentencing system, there is no compelling State interest for classifying prisoners according to the status of their crime for purposes of determining who will receive the benefit of retroactivity and who will not. Chiles contends that whether a crime is classified as "violent" or "nonviolent" or as "person" or "nonperson," retroactivity should be applied to all prisoners who were sentenced for felony criminal convictions prior to July 1, 1993, in order to satisfy the legislative purpose of eliminating the effects of past discrimination. He argues that to exclude him from the benefits of retroactivity because of the status of his crimes results in an arbitrary and discriminatory classification bearing no relationship to the purpose of retroactivity, *i.e.*, the elimination of the effects of past discrimination. He claims the failure to allow him the benefits of retroactivity intentionally discriminates against him a second time.

The State contends the purpose of the Kansas Sentencing Guidelines Act is broader than that claimed by Chiles. It argues that the overriding purpose in establishing the Kansas Sentencing Commission was to reduce overcrowding of prisons. The State claims the new Kansas sentencing law, which is a product of the Commission's activities, reflects the Commission's assumption that incarceration should be reserved for serious offenders and that the primary purposes of imprisonment under the sentencing guidelines are incapacitation and punishment.

Relying on the goals the Kansas Sentencing Commission set for itself, the State further argues that the Act has multiple pur-

poses, not the single purpose claimed by Chiles. According to the State, those purposes are: (1) to promote public safety by incarcerating violent offenders; (2) to preserve corrections resources by imposing shorter sentences or nonimprisonment sanctions on less dangerous offenders; (3) to reduce sentence disparity for similar crimes by eliminating biases resulting from the use of socioeconomic factors in sentencing; (4) to "standardize" and establish sentences that are proportional to the seriousness of the crime and injury to the victim; (5) to promote "truth in sentencing" by establishing determinate terms of incarceration and post-release supervision; (6) to collect information to assist correctional authorities in population management and programming needs; and (7) to provide lawmakers with the necessary information to make intelligent decisions regarding correctional system resources. Presumably, because the Act has multiple purposes, the retroactivity provision of the Act also has multiple purposes.

We find nothing in the legislative history set out by the petitioner which would dictate that the sole purpose of the retroactivity provision of the Act is to remedy the effects of past racial and geographical discrimination in sentencing. The petitioner has not presented evidence of any kind that the criteria for determining who will receive the benefits of retroactivity and who will not is a "classification involving race." The petitioner recognizes in his argument that the criteria will affect all prisoners who have been convicted of more serious crimes and certain drug crimes, not only those prisoners who are members of a minority group.

Chiles has attempted to frame this case as one involving a classification based on race and one in which there is proven racial discrimination in past sentencing practices. While this may or may not be the situation, this court has no evidence upon which to base such a determination. Thus, the strict scrutiny test is not required on these alleged grounds.

Chiles also contends the strict scrutiny test is required because "[t]he limited retroactivity provision also interferes with the fundamental right to be at liberty, affecting all prisoners who are excluded from retroactive application of the guidelines." Application of the limited retroactivity provision does not result in the immediate liberty or freedom of those prisoners to whom the retroactivity provision applies. It merely results in the recalcu-

lation of the length of those prisoners' sentences. The strict scrutiny test is not required on these grounds.

Chiles next contends that even if strict scrutiny "is not required by the legislature's finding of racial disparity among the sentences of current prisoners, the retroactivity limitation also fails under a rational basis review." As noted previously, the legislature made no finding regarding the existence or nonexistence of racial disparity in the previous sentencing scheme.

With a rational basis review, relevance is the only relationship required between the classification and the objective. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. Insofar as the objective is concerned, a statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it. The legislature's purpose in creating the classification need not be established. The classification must, however, bear a rational relationship to a legitimate objective. The rational basis test contains two substantive limitations on legislative choice: (1) legislative enactments must implicate legitimate goals, and (2) the means chosen by the legislature must bear a rational relationship to those goals. These limitations amount to a prescription that all persons similarly situated should be treated alike.

Chiles argues that the retroactivity provision creates distinctions between inmates along two lines: (1) inmates who were sentenced prior to the effective date of the Act as opposed to those sentenced thereafter and (2) inmates convicted of more serious offenses as opposed to those with less serious convictions. He argues this court must find that these two classifications rest upon some ground of difference having a fair and substantial relation to the objective of the legislation.

Chiles claims that although the classification at issue distinguishes between violent and nonviolent offenders,

"the actual inquiry is whether a rational basis exists for distinguishing between crimes committed before and after July 1, 1993. If six to seven years is an appropriate sentence for armed robberies after July 1, 1993, then it should also be appropriate for armed robberies before July 1, 1993. A classification based on nothing more than the date of an offense is arbitrary and devoid of any rational basis that promotes public safety."

However, Chiles is inconsistent in claiming that the classification is based only on the date of offense after first having pointed out that there are two criteria underlying the application of the retroactivity provision.

Chiles asserts that not only is the retroactivity limitation not related to furthering any of the purposes claimed by the State, but the retroactivity limitation also undermines a majority of those purposes. Specifically, he argues the limitation is not rationally related to furthering, and undermines the majority of, the following purposes (for the reasons or lack of reasons set out in the parentheses):

(1) the promotion of fairness in sentencing (because it is unfair to exclude violent offenders from the remedial benefit offered by the guidelines and because nonwhites on the average are serving longer sentences than whites);

(2) the reduction of prison overcrowding;

(3) the promotion of public safety (because continued incarceration of Chiles is inconsistent with the guidelines themselves, which would have ended his imprisonment years ago);

(4) the promotion of truth in sentencing;

(5) the preservation of corrections resources by imposing shorter sentences on nonviolent offenders (because only total retroactivity would do this).

Chiles makes some additional arguments disputing that one reason retroactivity was limited was because of the concern for the potential burden on post-release supervision, administrative costs, etc.

Regarding retroactivity, the general rule of statutory construction is that a statute will operate prospectively unless its language clearly indicates the legislature intended that it operate retrospectively. This rule is modified where the statutory change is merely procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties. The prescription of a punishment for a criminal act is substantive, not procedural, law. *State v. Hutchison*, 228 Kan. 279, 287, 615 P.2d 138 (1980). It would be improper for this court to extend retroactivity when

it is clearly limited in the Kansas Sentencing Guidelines Act. Regardless of how this court decides this matter, Chiles cannot have the benefit of the retroactivity provision because the retroactivity provision would reduce his punishment and retroactivity of the sentences for the crimes of which he stands convicted was clearly not intended by the legislature. This court would be changing the substantive law relative to the length of Chiles' sentence if it ruled the retroactivity provision was applicable to him.

The legislature has the exclusive role of providing for the punishment of convicted criminals. *State v. Reed*, 248 Kan. 792, 798, 811 P.2d 1163 (1991). It follows that the legislature has the power to enact legislation reducing the punishment of convicted criminals or granting leniency to them. The legislative power to punish convicted criminals is controlled only by the Constitutions of the United States and of the State of Kansas.

"Clearly, the sentencing function in a criminal case is considered a judicial function. [Citation omitted.] Equally clear is the legislature's exclusive role in providing, through our statutes, for the punishment of convicted criminals. The power of the legislature to specify the punishment for a crime is controlled only by the Constitutions of the United States and the State of Kansas. *State v. Keeley*, 236 Kan. 555, 560, 694 P.2d 422 (1985)." 248 Kan. at 798.

"The power to prescribe the penalty to be imposed for the commission of a crime rests exclusively with the legislature, not the courts. The power of the legislature to specify the punishment for a crime is controlled only by the Constitutions of the United States and the State of Kansas." *State v. Keeley*, 236 Kan. 555, 560, 694 P.2d 422 (1985).

"[A] statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down." *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1991).

"Where the constitutionality of a statute is involved, the question presented is, therefore, not whether the act is authorized by the constitution, but whether it is prohibited thereby." *State ex rel. Schneider v. Kennedy*, 225 Kan. 13, 20, 587 P.2d 844 (1978).

The State contends that a strict scrutiny analysis is not required in this case because a suspect class is not involved. According to the State, the class here involved is a class of prisoners, and prisoners are not a suspect class, nor do they have a fundamental

right to parole or early release from expiration of a valid sentence. The State further argues that within the class of prisoners, Chiles is not similarly situated with prisoners who have the benefit of the retroactivity provision. The reason, according to the State, is that Chiles' status is that of a serious or violent offender and that status removes him from the group of persons convicted of less serious crimes, and it is the latter group only which is entitled to retroactivity.

The State claims that Chiles' attempt to compare his situation with persons sentenced on or after July 1, 1993, is also without merit because the legislature is free to enact any statute within its constitutional authority and apply it prospectively to future crimes. See *State v. Sutherland*, 248 Kan. 96, 107-08, 804 P.2d 970 (1991).

The State also contends that if a strict scrutiny test is appropriate, a compelling reason exists for the limited retroactivity provision, that is, the reduction of prison overcrowding while maintaining the public safety by allowing less serious criminals to serve less time, while more serious criminals continue to serve the sentence imposed by the trial judge after consideration of the statutory factors listed in K.S.A. 21-4601 and K.S.A. 1993 Supp. 21-4606.

The State also argues that another justification for the limited retroactivity provision is that a wholesale release of current inmates in the system would have a drastic effect on its ability to supervise prisoners post-release. The State cites portions of the minutes of the Senate Judiciary Committee, which state that "the view of the Committee is to allow retroactivity but not at the expense of the public safety or detriment of field services." (Minutes of the Senate Committee on Judiciary, January 24, 1992.)

The State also points out that the limited retroactivity provision is not without precedent:

"Beginning in 1984, persons without a prior felony conviction who were convicted of a class E felony were entitled to presumptive probation 'unless the conviction is of a crime specified in article 34, 35 or 36 of chapter 21 of the Kansas Statutes Annotated.' L. 1984, Ch. 119 New Section 1, p. 613 (current version of K.S.A. 1992 Supp. 21-4606a). In 1989, the statute was amended to allow for presumptive probation for first-time felons convicted of class D felonies or an attempt to commit a class D felony, but again chapter 34, 35 or 36 crimes were excepted from the provision and felony

drug crimes were also excepted. L. 1989, Ch. 92 § 3, p. 624. The crimes listed in chapter 34, 35 and 36 generally involve serious crimes against persons, such as murder or attempts or conspiracies to commit murder, sex crimes, other crimes committed against persons which involve the use of force, and crimes against family members. These are generally the same crimes excepted from retroactivity under the sentencing guidelines. The legislature's decision to prevent persons convicted of these serious crimes from being granted probation is strong evidence of the compelling state interest in public safety."

As noted, the State contends that a strict scrutiny test is not proper in this case. Further, the State argues that a rational basis review is appropriate and that under a rational basis review, the limited retroactivity provision clearly passes constitutional muster because the provision is reasonably related to the legitimate state interests in reducing the prison population while protecting public safety.

In *Marshall v. United States*, 414 U.S. 417, 38 L. Ed. 2d 618, 94 S. Ct. 700 (1974), the United States Supreme Court considered a case we deem analogous. In the *Marshall* case, the defendant pleaded guilty to entering a bank with intent to commit a felony. Congress had authorized the trial judge to exercise discretion and place a drug addict in rehabilitation treatment rather than prison. Congress also excluded from the rehabilitation program those persons convicted of a crime of violence or two or more prior felonies (other exclusions also applied).

Marshall was a drug addict. He also had three prior felony convictions for burglary, forgery, and possession of a firearm. The trial court held that 18 U.S.C. § 4251(f)(4) (1988) (exclusion for two or more prior felonies) excluded Marshall from participation in the drug rehabilitation program in lieu of prison. Marshall moved to set the sentence aside on the ground that the two prior felonies exclusion denied him due process and equal protection.

The rehabilitation program provided rehabilitative commitment prior to trial, and upon successful completion of the treatment the charge would be dismissed.

The trial judge, Court of Appeals, and the United States Supreme Court all agreed there was no "suspect" classification under the statutory scheme because there is no "fundamental right" to rehabilitation from narcotic addiction at public expense after being charged with a felony. Thus, the correct test to be applied was

the "rational basis" test. The standard to be applied was whether the statutory classification bore some relevance to the purpose for which the classification was made.

The *Marshall* court stated that the Due Process Clause of the Fifth Amendment does not require that all persons be dealt with identically so long as there is a rational basis for the disparity in treatment. The Court reasoned that Congress sought to include those most likely to benefit from treatment and to treat others in the traditional manner. The Court said:

"It should be recognized that the classification selected by Congress is not one which is directed 'against' any individual or category of persons, but rather it represents a policy choice in an experimental program made by that branch of Government vested with the power to make such choices. The Court has frequently noted that legislative classifications need not be perfect or ideal. The line drawn by Congress at two felonies, for example, might, with as much soundness, have been drawn instead at one, but this was for legislative, not judicial choice. . . .

. . . .

"We therefore hold that Title II of NARA, 18 U.S.C. §§ 4251-4255, does not constitute a denial of due process or equal protection by excluding from rehabilitative commitment, in lieu of penal incarceration, addicts with two or more prior felony convictions." 414 U.S. at 428-30.

In *Michael M. v. Sonoma County Superior Court*, 450 U.S. 464, 67 L. Ed. 2d 437, 101 S. Ct. 1200 (1981), the United States Supreme Court considered a criminal statute that made it a crime for any male (regardless of age) to have sexual intercourse with any female (not his wife) who was under 18 years of age. The issue was the constitutionality of a statute which made one party to a consensual act guilty of a crime while the other party was classified as a victim, based solely on gender. The Court held the statute discriminatory on the basis of sex and subject to the "strict scrutiny" test; thus, it had to be justified by a compelling State interest.

The Court held that at least one purpose of the statute was to prevent illegitimate pregnancies and that the State had a strong interest in preventing such pregnancies. From there, the Court seemed to reason that if the statute was gender-neutral, the purpose would be thwarted because there would be little, if any, cooperation from the female.

From *Marshall,* we would conclude the correct test is the rational basis test. In *Marshall,* violent offenders were excluded as were those with a criminal history of two or more felony convictions. Thus, the salient provisions are very similar to those presented by the case at bar.

Chiles does attempt to gain "strict scrutiny" review based on his argument that one of the primary purposes of the new sentencing guidelines is to correct perceived racial bias. The record does not clearly show racial bias, as the disparity discussed by various witnesses may be due to socioeconomic reasons rather than racial bias. However, it is very clear that the study conducted showed that blacks fared worse than whites at every stage studied.

We view the dispositive question here as whether the sentencing guidelines are unconstitutional. Thus, the *Marshall* case controls and the review standard is whether there is a rational basis for the classification.

The "more serious v. less serious offenses" classification involved in this case, for purposes of determining who will receive the benefits of retroactivity and who will not, is rationally related to the purpose of reducing the prison population while protecting public safety.

If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down. The limited retroactivity provision of the Kansas Sentencing Guidelines Act does not clearly violate the constitution. There is no suspect class or fundamental right involved in this case.

Here, the retroactivity provision is valid in that it is reasonably related to the legitimate objective of reducing prison population while maintaining public safety. There is no violation of the Equal Protection Clause of the United States Constitution and no violation of § 1 of the Kansas Constitution Bill of Rights.

In the statement of the issue in his pro se petition for writ of mandamus and quo warranto, Chiles also argues he has been denied due process:

"Senate Bill No. 479, its limited retroactivity, is violative of the equal protection and *due process* provision of the Fourteenth Amendment to the United States Constitution and Section One and Two of the Kansas Bill of Rights-in that the statute discriminates between current inmates and those

to be sentenced on or after July 1, 1993-in a manner which bears no rational relationship to the purpose of the legislation." (Emphasis added.)

The State notes that due process challenges to legislative acts are not a favored method of challenging legislation because the court is not authorized to act as a "super-legislature" and strike down any laws it thinks are unwise, improvident, or inappropriate. See *Blue v. McBride*, 252 Kan. 894, 903, 850 P.2d 852 (1993).

The State argues that the Kansas Sentencing Guidelines Act bears a real and substantial relation to legitimate government objectives and is reasonable in relation to these objectives. The State further argues that, in particular, the limited retroactivity provision of the Kansas Sentencing Guidelines Act was clearly adopted to serve the community interest in public safety.

"A statute comes before the court cloaked in a presumption of constitutionality, and it is the duty of the party attacking the statute to sustain the burden of proof." *Peterson v. Garvey Elevators, Inc.*, 252 Kan. 976, Syl. ¶ 4, 850 P.2d 893 (1993).

In *Clements v. United States Fidelity & Guaranty Co.*, 243 Kan. 124, 127, 753 P.2d 1274 (1988), this court stated:

"The difference between the constitutional concepts of due process and equal protection is that due process emphasizes fairness between the state and the individual dealing with the state, regardless of how other individuals in the same situation are treated, while equal protection emphasizes disparity in treatment by a state between classes of individuals whose situations are arguably indistinguishable. *Ross v. Moffitt*, 417 U.S. 600, 41 L. Ed. 2d 341, 94 S. Ct. 2437 (1974). The test in determining the constitutionality of a statute under due process or equal protection weighs almost identical factors.

"When a statute is attacked as violative of due process, the test is whether the legislative means selected has a real and substantial relation to the objective sought. This rule has been restated in terms of whether the regulation is reasonable in relation to its subject and is adopted in the interest of the community. *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 614, 576 P.2d 221 (1978)."

In *Peterson*, 252 Kan. 976, a due process challenge was made to K.S.A. 1992 Supp. 44-528. In considering the challenge there, the court stated: "[I]n addressing whether K.S.A. 1992 Supp. 44-528(a) violates equal protection, we implicitly will have determined if the statute violates due process." 252 Kan. at 981.

In looking at the limited retroactivity provision and the sentencing grids, it is apparent that the legislature intended to give the benefits of retroactivity only to those prisoners who had been convicted of less serious offenses. The legislature's objective was to achieve the reduction of prison overcrowding by the early release of some prisoners while concomitantly promoting the public safety by limiting the early release to less serious offenders. It is reasonable to assume that the interest of the public safety of the community underlay the legislative decision to limit the scope of the retroactivity provision to less serious offenders. The limited retroactivity provision is reasonable in relation to its subject, was adopted in the interest of the community, and is not violative of due process.

The petition for writ of mandamus and quo warranto is denied.