(946 P.2d 637)

No. 77,050

STATE OF KANSAS, *Appellee*, v. INMAN STANDIFER, *Appellant*.

Opinion filed October 10, 1997.

*Ryan Kipling Elliot*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Charles R. Reimer*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before KNUDSON, P.J., STEPHEN D. HILL, District Judge, assigned, and PAUL E. MILLER, District Judge, assigned.

KNUDSON, J.: Inman Standifer appeals from the district court's denial of his motion to convert sentence ostensibly filed pursuant to K.S.A. 21-4724(d)(1). The district court summarily dismissed Standifer's motion for lack of jurisdiction because it was not filed within 30 days after issuance of a sentencing guidelines report from the Department of Corrections (DOC).

The district court erred. A panel of this court recently held that a pro se motion for conversion of sentence filed out of time under K.S.A. 21-4724(d)(1) should be considered by the district court as a motion filed under K.S.A. 60-1507. *State v. Harlin*, 23 Kan. App. 2d 800, 801-02, 936 P.2d 292 (1997). Starting from this premise, we turn to the underlying circumstances of this litigation before deciding what relief, if any, should be afforded Standifer.

On April 17, 1993, Standifer committed several crimes, including possession of cocaine, a class C felony (K.S.A. 65-4127a). On October 21, 1993, he was sentenced to a controlling term of 3 to 10 years and placed on probation for 2 years. As required under K.S.A. 21-4724(f), the district court also determined the appropriate guidelines sentence would be 18 months, with a postrelease supervision period of 12 months. This guidelines sentence was based upon Standifer falling within the 4E grid block for drug offenses.

On March 4, 1994, Standifer's probation was revoked. Inexplicably, DOC then prepared a sentencing guidelines report notwithstanding the district court had already determined the appropriate guidelines sentence when Standifer was originally sentenced. Under such circumstances, he was not entitled to the conversion procedures provided under K.S.A. 21-4724(c) and (d). See *State v. Fierro*, 257 Kan. 639, 649-50, 895 P.2d 186 (1995). This strongly suggests that if Standifer were challenging the computation of his guidelines sentence, a timely and direct appeal from the sentencing hearing of October 21, 1993, would be required. But the issue Standifer now raises has nothing to do with the computation of sentence.

Standifer contends that he is being subjected to an illegal sentence because the prospective imposition of the 1996 amendments to the Kansas Sentencing Guidelines Act (KSGA) violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and § 1 of the Kansas Constitution Bill of Rights. An illegal sentence may be corrected at any time. See K.S.A. 22-3504(1); *State v. Hooks*, 256 Kan. 869, 870, 888 P.2d 853 (1995). Our appellate courts have previously accepted jurisdiction of mislabeled motions in the interest of judicial economy

and, where only a pure question of law is at issue, resolved the issue without remand to the district court. *State v. Randall*, 257 Kan. 482, 486, 894 P.2d 196 (1995). See also *State v. Bell*, 258 Kan. 123, 126, 899 P.2d 1000 (1995) (holding that pure legal questions raised for the first time on appeal may be addressed to serve the ends of justice and to prevent denial of fundamental rights). We conclude Standifer's mislabeled motion should be treated as a K.S.A. 60-1507 motion and his equal protection argument considered by this court notwithstanding his failure to argue this issue before the district court.

The 1996 amendments to K.S.A. 21-4705(d) changed certain presumptive imprisonment boxes to "border boxes," thus making defendants who fall into one of those boxes and who commit crimes on or after July 1, 1996, eligible for an optional nonprison sentence. The 4E box on the drug grid is one of the new border boxes. Standifer argues that under an equal protection analysis the amendments should be given retroactive application. Standifer assumes that, if the amendments are given retroactive application, equal protection would likewise entitle him to conversion under K.S.A. 21-4724(b)(1) simply by virtue of being in a border box, despite the fact that K.S.A. 21-4724(b) was not amended to expand eligibility for conversion on the drug grid. We need not address this assumption, because we conclude that equal protection does not entitle Standifer to retroactive application of the 1996 drug grid amendments.

In *State v. Ford*, 262 Kan. 206, 209, 936 P.2d 255 (1997), the Supreme Court concluded the 1996 amendments were intended to only apply prospectively. A panel of this court reached the same conclusion in *Comer v. State*, 24 Kan. App. 2d 131, 134, 942 P.2d 658 (1997). However, in these decisions the underlying issue was one of statutory interpretation or construction. Neither case addressed the equal protection argument that is now before this court.

The Supreme Court in *Chiles v. State*, 254 Kan. 888, 901, 869 P.2d 707, *cert. denied* 513 U.S. 850 (1994), did address the issue of whether the provision of the KSGA which allowed limited retroactivity violated equal protection. The court first determined

the appropriate level of scrutiny to be the rational basis test and then stated:

"With a rational basis review, relevance is the only relationship required between the classification and the objective. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. Insofar as the objective is concerned, a statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it. The legislature's purpose in creating the classification need not be established. The classification must, however, bear a rational relationship to a legitimate objective. The rational basis test contains two substantive limitations on legislative choice: (1) legislative enactments must implicate legitimate goals, and (2) the means chosen by the legislature must bear a rational relationship to those goals. These limitations amount to a prescription that all persons similarly situated should be treated alike." 254 Kan. at 895.

The *Chiles* court held that "[t]he 'more serious v. less serious offenses' classification involved in this case, for purposes of determining who will receive the benefits of retroactivity and who will not, is rationally related to the purpose of reducing the prison population while protecting public safety" and was, therefore, not violative of equal protection. 254 Kan. at 901.

In *State v. Fierro*, 257 Kan. 639, the Supreme Court considered whether K.S.A. 1993 Supp. 21-4724 was unconstitutional because it did not expressly provide a means of obtaining sentencing conversion for defendants who committed their crimes prior to July 1, 1993, but were sentenced after June 30, 1993. Fierro argued that a classification to determine sentencing conversion based solely upon the date of sentence would violate equal protection. The Supreme Court agreed and construed K.S.A. 1993 Supp. 21-4724 as providing convicted defendants sentenced after July 1, 1993, the same opportunity for retroactivity as offenders already serving their sentences. 257 Kan. at 647.

Standifer's argument now before us is distinguishable from the issue presented in *Fierro* because the suspect classification is based upon the date the offense was committed, not the date of sentence.

It is the general rule that the statutory penalty in effect at the time a crime is committed is the penalty that will be imposed, *State v. Patterson*, 257 Kan. 824, 825, 896 P.2d 1056 (1995), and "where the penalty for an offense has been changed by an amendment of

the law since the offense is charged or proved to have been committed, the penalty imposed must be under the law as it stood when the offense was committed." *State v. Johnson*, 185 Kan. 1, 5, 340 P.2d 373 (1959). However, it is within the province of the legislature to reduce criminal penalties and provide for retroactive application, constrained only by the Constitutions of the United States and of the State of Kansas. *Chiles*, 254 Kan. at 897.

Standifer does not argue his sentence was inconsistent with the sentencing scheme in place at the time he committed the offense or was sentenced. He tacitly acknowledges the sentence he received was consistent with the sentence that could have been lawfully imposed upon any other defendant committing a like crime at that same point in time. Under these circumstances and the holding in *Patterson*, Standifer's claim is tenuous. We note that he has not cited authority from any jurisdiction holding that a legislative reduction of criminal penalties has equal protection implications for offenders previously sentenced. This lack of authority, notwithstanding the constant revisions of criminal codes by the legislatures of 50 states, is mute testimony as to the novelty of his argument. Moreover, other jurisdictions that have considered this issue have concluded there is no violation of equal protection.

In *People v. Montoya*, 647 P.2d 1203, 1205 (Colo. 1982), the defendant claimed that the prospective-only limitation of a sentencing statute constituted an unreasonable classification of offenders on the basis of the date of the offense in violation of equal protection. The Colorado Supreme Court applied the "rational basis" test and, in rejecting the defendant's claim, stated:

"The state has a legitimate interest in maintaining finality of judgments as well as in providing for uniformity of punishment. Consequently, the fixing of punishments for offenders based upon the date on which their crimes were committed is reasonably related to these legitimate governmental interests and is not violative of equal protection of the laws." 647 P.2d at 1206.

In *Meeks v. Jago*, 548 F.2d 134, 138 (6th Cir. 1976), *cert. denied* 434 U.S. 844 (1977), the Court held that the defendant was not denied equal protection of the laws as long as the sentence was imposed according to the Ohio statute applicable at the time of sentence.

In *McQueary v. Blodgett*, 924 F.2d 829, 831 (9th Cir. 1991), the petitioner, McQueary, had been convicted of first-degree assault in August 1976. In his petition for a writ of habeas corpus, he asserted an equal protection violation because of the State's failure to reduce his sentence to a term consistent with the Washington Sentencing Reform Act of 1981. The 9th Circuit held that McQueary failed to present a bona fide equal protection claim, stating:

" 'There is no denial of equal protection in having persons sentenced under one system for crimes committed before July 1, 1984 and another class of prisoners sentenced under a different system. [Citation omitted.] The standard is of a rational relation to governmental purpose. [Citation omitted.] Improvement in sentencing is a rational governmental purpose.' [Citation omitted.]" 924 F.2d at 834.

We believe there is a common thread of reasoning in these various decisions. The State has an interest in maintaining stability in the sentencing process and a concomitant obligation to improve the criminal justice system. The rule that the criminal statute in effect at the time the crime was committed is the penalty to be imposed serves these legitimate governmental interests and does not violate the Equal Protection Clause of the Fourteenth Amendment or § 1 of the Kansas Constitution Bill of Rights.

Affirmed.