No. 127,476

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIE JOE EMERY,
*Appellant*.

SYLLABUS BY THE COURT

When an offender raises a criminal history challenge for the first time on appeal, K.S.A. 21-6814(d) allows an appellate court to consider journal entries from Kansas and out-of-state convictions if the challenge can be answered on the face of the journal entries. If not, and further evidence is required, K.S.A. 21-6814(d) allows an appellate court to take judicial notice of journal entries, complaints, plea agreements, jury instructions, and verdict forms from Kansas convictions.

Appeal from Sedgwick District Court; SEAN M.A. HATFIELD, judge. Submitted without oral argument. Opinion filed August 22, 2025. Sentence vacated and case remanded with directions.

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., CLINE and COBLE, JJ.

CLINE, J.: After Willie Joe Emery pled guilty to violating the Kansas Offender Registration Act (KORA), the district court sentenced him to the low number in the

applicable sentencing guidelines grid-box, which was 53 months in prison. Before Emery was sentenced, he admitted his presentence investigation (PSI) report accurately calculated his criminal history score as a C. For the first time on appeal, he contends that his criminal history score was improperly calculated, rendering his sentence illegal. His criminal history included eight prior convictions but his 2010 Tennessee conviction for "Sexual Offender Registration/Monitoring Act" in violation of Tenn. Code Ann. § 40-39-208 was the only one scored as a person felony. He now claims this conviction should have been classified as a nonperson felony.

An offender can challenge an illegal sentence at any time while the offender is serving the sentence. K.S.A. 22-3504(a). And a sentence based on an incorrectly calculated criminal history score satisfies the definition of an illegal sentence in K.S.A. 22-3504(c)(1).

In 2022, the Legislature added procedures governing criminal history challenges raised for the first time on appeal, like Emery's. See K.S.A. 21-6814(d). An offender can now provide the appellate court with journal entries that were not originally attached to the criminal history worksheet and we can take judicial notice of "such journal entries, complaints, plea agreements, jury instructions and verdict forms for Kansas convictions when determining whether prejudicial error exists." K.S.A. 21-6814(d). To support his claim, Emery has provided his Tennessee journal entry of conviction and the Tennessee indictment he claims initiated the proceedings which resulted in his conviction.

The State contends K.S.A. 21-6814(d) does not allow us to consider out-of-state documents and so it argues Emery has not met his burden to show his score was improperly calculated. While we do not entirely agree with the State's interpretation of K.S.A. 21-6814(d), that disagreement is largely irrelevant. When applying the process set forth in K.S.A. 21-6811(e)(3)(B) for counting out-of-state convictions in determining an offender's criminal history, we find Emery's Tennessee conviction should have been

classified as a nonperson felony. Thus, his criminal history should have been scored as E instead of C. See K.S.A. 21-6809. We therefore vacate Emery's sentence and remand this case to the district court for resentencing in accordance with these findings.

REVIEW OF EMERY'S APPELLATE CHALLENGE

The proper classification of a prior conviction involves a legal question over which we exercise unlimited review. *State v. Dickey*, 305 Kan. 217, 220, 380 P.3d 230 (2016). And while K.S.A. 21-6814(d) grants Emery a limited avenue to challenge his criminal history determination for the first time on appeal, he bears the burden to show his conviction was misclassified. See K.S.A. 21-6814(c); *State v. Daniels*, 319 Kan. 340, 348, 554 P.3d 629 (2024).

We begin our analysis by examining K.S.A. 21-6814(d) to determine whether it allows us to consider the out-of-state documents Emery has provided on appeal. We then address whether Emery's Tennessee conviction was misclassified.

I. *Does K.S.A. 21-6814(d) allow Kansas appellate courts to consider out-of-state documents when an offender raises a challenge to their criminal history for the first time on appeal?*

K.S.A. 21-6814 was amended in 2022 to add subsection (d), which reads:

"If an offender raises a challenge to the offender's criminal history for the first time on appeal, the offender shall have the burden of designating a record that shows prejudicial error. If the offender fails to provide such record, the appellate court shall dismiss the claim. In designating a record that shows prejudicial error, the offender may provide the appellate court with journal entries of the challenged criminal history that were not originally attached to the criminal history worksheet, and the state may provide the appellate court with journal entries establishing a lack of prejudicial error. The court may take judicial notice of such journal entries, complaints, plea agreements, jury

3

instructions and verdict forms for Kansas convictions when determining whether prejudicial error exists. The court may remand the case if there is a reasonable question as to whether prejudicial error exists." L. 2022, ch. 73, § 4.

When interpreting subsection (d)—as with any statute—we are tasked with ascertaining the Legislature's intent in enacting the statute. *State v. Henning*, 289 Kan. 136, 139, 209 P.3d 711 (2009). Since the best evidence of this is the language chosen by the Legislature to express its intent, we start there, giving common words their ordinary meaning. If the statute's language is not self-explanatory, we then turn to outside sources to clarify the meaning of the text such as the legislative history of the statute and "canons of construction." *Johnson v. U.S. Food Service*, 312 Kan. 597, 600-01, 478 P.3d 776 (2021). Canons of construction are a set of default assumptions courts make about how the Legislature expresses statutory meaning. These canons—some of which have historic Latin names—assume the way the Legislature uses language, grammar, punctuation, and sentence structure in drafting statutes is purposeful. Brannon, *Canons of Construction: A Brief Overview*, Congressional Research Service (May 9, 2025).

We must interpret the third and fourth sentences of K.S.A. 21-6814(d) to answer the first question before us. And we agree with the parties that there is ambiguity in these sentences regarding whether we can consider out-of-state journal entries when an offender raises a challenge to their criminal history for the first time on appeal. While both sentences mention journal entries, they describe the journal entries differently. The fourth sentence restricts the items we can take judicial notice of to a specific list of documents for "Kansas convictions" (which includes journal entries), but the third sentence does not contain this jurisdictional restriction. Instead, the only limiting language contained in the third sentence is that the journal entries we can consider must not have been originally attached to the offender's criminal history worksheet. Since we cannot resolve the question before us by simply reviewing the statute, we must look elsewhere for assistance in interpreting its language.

4

Both Emery and the State attempt to use the limited legislative history of subsection (d) to support their respective positions. But we do not find this history or their arguments particularly helpful. Most importantly because the history both sides rely on is nonlegislator proponent testimony for various versions of bills that sought to amend K.S.A. 21-6814 to add subsection (d)—none of which mentions out-of-state journal entries. Instead, the testimony largely relates to the overall reasons why the proponents supported the bills—which, collectively and generally, seem to be because the proposed amendment provides a limited process for correction of illegal sentences on appeal to encourage litigants to bring more complex claims at the district court. We therefore turn to canons of statutory construction to discern the Legislature's intent and meaning of subsection (d). *Johnson*, 312 Kan. at 601.

To begin, both parties correctly point out that one of these canons provides that we must construe various provisions of a statute *in pari materia*, meaning we must read them in context and construe them in a way that reconciles or brings them into a workable harmony. *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022). According to the State, this means the third and fourth sentences in subsection (d) must be read together; that is, interpreted as addressing the same subject matter. The State thus asks us to apply the jurisdictional restriction in the fourth sentence to the journal entries mentioned in the third sentence. The consequence of such an interpretation would be that litigants could not attach out-of-state journal entries on appeal.

But the State's proposed interpretation violates several other canons of statutory construction. First, we cannot graft words from the fourth sentence of subsection (d) onto the third sentence to reconcile the ambiguity because we must "read the statutory language as it appears, without adding or deleting words." *State v. Gray*, 306 Kan. 1287, 1294, 403 P.3d 1220 (2017). The Legislature knew how to limit the documents we can consider on appeal—it did so in the fourth sentence of subsection (d)—and it did not do so in the third sentence. We therefore must presume the Legislature's inclusion of the

5

jurisdictional limitation in one sentence but not the immediately preceding sentence was meaningful and intentional. See *State v. Hambright*, 310 Kan. 408, 419, 447 P.3d 972 (2019) (applying *expressio unius est exclusio alterius*, a canon dictating that the inclusion of one thing implies the exclusion of another). We also find that synthesizing the two sentences, as the State advocates, would render portions of the sentences somewhat superfluous or redundant. Yet another canon of statutory construction, the surplusage canon, requires us to read each provision of a statute to add new meaning. See *Stanley v. Sullivan*, 300 Kan. 1015, 1021, 336 P.3d 870 (2014) (court presumes the Legislature does not intend to enact superfluous or redundant legislation).

For these reasons, we find the more harmonious interpretation of subsection (d)— and the one which better acknowledges the Legislature's meaning behind the statute's language—is to read the sentences as having independent purposes. That is, the third sentence covers situations where journal entries can resolve the issue and the fourth sentence covers a subset of situations when journal entries alone cannot resolve the issue. According to subsection (d), when designating a record on appeal to show a prejudicial sentencing error, an offender may provide the appellate court with journal entries that were not originally attached to their criminal history worksheet (and the State may counter with other journal entries). And we find there is no jurisdictional limit on the journal entries the court can review on appeal to determine the issue because the Legislature did not include one. But when the journal entries do not answer the question and a deeper inquiry is required, we can take judicial notice of certain documents to fill in the gap: consisting of the types of documents for Kansas convictions listed in the fourth sentence of subsection (d) and any journal entries.

There are several situations where a court may need to review additional court documents to classify a prior Kansas conviction because the journal entry does not conclusively answer the question. For example, when reviewing a Kansas conviction for criminal threat, the journal entry might just show a conviction for criminal threat

6

generally, but an offender could submit other documents in the case to show it was reckless when challenging how that criminal threat conviction was scored on appeal. Another instance where a court would need to review additional Kansas court documents is when Kansas misdemeanors were aggregated and scored as a felony, but the offender claims on appeal that they were not appointed counsel in those cases and so the convictions cannot be considered in their criminal history score. See *State v. Long*, 43 Kan. App. 2d 328, 336-38, 225 P.3d 754 (2010) (A previous misdemeanor conviction in which the defendant was denied counsel and sentenced to a term of imprisonment, even if such term of imprisonment was suspended or conditioned upon a nonprison sanction, may not be counted in the offender's criminal history or used for enhancement purposes.). Again, that information may not show up in the journal entry of judgment, but other court filings from the case could establish the existence or lack of counsel.

Although we do not find the legislative history of subsection (d) to be particularly instructive, our interpretation of (d) is in line with the supposed purposes behind (d) that each party cites. For instance, the State argues subsection (d) was "intended to limit first time claims on appeal that criminal history scores were incorrect where there is no record for support." Under our interpretation, an offender is still obligated to designate a record on appeal to support their claim and they still have the burden to prove it. We simply recognize that the offender can do so with an out-of-state journal entry—if the matter can be resolved on the face of that journal entry. And Emery notes one of subsection (d)'s purposes is to reduce illegal sentences by ensuring accurate classification of criminal history—which our interpretation also supports by allowing consideration of out-of-state journal entries if those entries can clarify the accuracy of an offender's criminal history on their face.

Our interpretation also recognizes another reality—which may or may not have motivated the adoption of subsection (d)—which is that obtaining out-of-state journal entries ordinarily takes longer than obtaining Kansas ones. The legislative history of H.B.

2516, which included the addition of subsection (d), contains testimony opposing an earlier version which would have required the State to attach all journal entries to establish an offender's criminal history to their PSI report. Opponents to this provision in an earlier version of the bill described the difficult and lengthy process that is sometimes required to obtain out-of-state journal entries, noting the proposed requirement to obtain all journal entries could delay sentencing and increase detention times while awaiting receipt of the journal entries. Testimony on H.B. 2516, Senate Judiciary Committee (March 8, 2022). By allowing offenders to provide journal entries on appeal that were not originally attached to their criminal history worksheet, the Legislature could have recognized this state of affairs and chosen not to foreclose an offender's ability to challenge their criminal history using journal entries that may not have been available at the time of sentencing—such as those from out-of-state jurisdictions.

The State also argues K.S.A. 21-6814(d) was written to prevent "complex" illegal sentence claims from being raised for the first time on appeal. But a sentencing appeal that can be determined simply by viewing a journal entry is not complex. For example, our court reviewed the face of newly provided journal entries on appeal to determine whether an offender's criminal history score was miscalculated in *State v. Labroi*, No. 126,495, 2024 WL 3634296 (Kan. App. 2024) (unpublished opinion). There, Labroi's PSI report included nine misdemeanors that were converted to the equivalent of three person felonies for criminal history purposes, three of which were from one Wichita Municipal Court case. When challenging his criminal history on appeal, Labroi provided the journal entry for the case listed in the PSI report, 20 DV 1348, which identified a different defendant and showed an amended charge that did not correspond to the convictions in Labroi's PSI report. In response, the State provided the journal entry for case 21 DV 1348, which identified Labroi by name, and included a date of birth and a partial Social Security number corresponding to that information for Labroi in the district court records. The convictions on that journal entry corresponded to the convictions listed in Labroi's PSI report. Our court was able to review the journal entries alone—without

8

looking at any additional documents—to determine that Labroi's criminal history was not incorrectly calculated. 2024 WL 3634296, at *1. We conducted a similar review in *State v. Jeffcoat*, No. 126,158, 2023 WL 8664688, at *3-4 (Kan. App. 2023) (unpublished opinion), where we found a federal judgment of a prior conviction sufficiently answered whether the conviction was improperly classified.

When courts can review the face of a journal entry to determine whether a conviction was properly scored, no fact-finding is required. Accord *State v. Marshall*, No. 119,710, 2019 WL 5849911, at *6-7 (Kan. App. 2019) (unpublished opinion) (noting a court does not engage in impermissible judicial fact-finding in violation of *Apprendi* when it uses the face of a record to classify a defendant's conviction). But when a court must interpret related documents to determine the nature of a prior conviction—such as the complaints, plea agreements, jury instructions, and verdict forms mentioned in subsection (d)—then we cross the line between simply reading a document (i.e., to determine what subsection of a statute is listed or whether its identifying information matches information in the offender's PSI report) into determining facts that are not readily apparent in that document (i.e., to determine what crimes an offender was charged with, pled to, or their jury was instructed on). As the State points out, Kansas appellate courts are generally familiar with and understand the documents mentioned in subsection (d) for Kansas convictions, but we do not routinely encounter and analyze such out-of-state documents, which may not carry the same import as Kansas documents or even be in a similar format. See *Sall v. T's, Inc.*, 281 Kan. 1355, 1362, 136 P.3d 471 (2006) ("The Court of Appeals sits not as a finder of fact but as an appellate court."). The Legislature thus struck a balance between when fact-finding is required—such as when a journal entry does not answer the question on its face—and when it is not—such as when the answer is clear from the face of the journal entry—by limiting the type and originating jurisdiction of the additional documents we can consider for the first time on appeal. K.S.A. 21-6814(d).

This interpretation of subsection (d) is also in line with the approaches sentencing courts take when an offender challenges their criminal history in the district court. Our Supreme Court has identified two approaches which a sentencing court should follow when classifying an offender's prior convictions for the purpose of establishing the offender's criminal history under the Kansas Sentencing Guidelines Act (KSGA): the "categorial approach" and the "modified categorial approach." These approaches were adopted in *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), to avoid the fact-finding prohibited by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when classifying convictions under federal law, but our Supreme Court has found them equally applicable when classifying prior convictions under the KSGA. *State v. Dickey*, 301 Kan. 1018, 1039, 350 P.3d 1054 (2015).

A sentencing court applies the categorical approach when the statute forming the basis of the defendant's prior conviction contains a single set of elements constituting the crime, allowing the sentencing court to classify the prior conviction by simply examining the elements of the statute. *Dickey*, 301 Kan. at 1037. Similarly, K.S.A. 21-6814(d) allows appellate courts to consider journal entries of the challenged criminal history that were not originally attached to the criminal history worksheet, including journal entries from other jurisdictions, when we can simply examine those journal entries and any relevant statutes to answer the question.

The modified categorical approach applies when the statute forming the basis of the prior conviction is a "divisible statute," i.e., a statute which includes multiple, alternative versions of the crime and at least one of the versions matches the elements of the generic offense. With this type of conviction, the court cannot make the necessary determination based only on the statute's language. So it is allowed to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction, including "charging documents, plea agreements, jury

10

instructions, verdict forms, and transcripts from plea colloquies as well as findings of fact and conclusions of law from a bench trial" when utilizing this approach to classifying prior convictions. *Dickey*, 301 Kan. at 1037-38. And when we must delve deeper to address a challenged criminal history classification on appeal, such as when a journal entry does not answer the question on its face, the Legislature allows us to take judicial notice of a limited class of documents to answer the question. K.S.A. 21-6814(d).

We therefore find K.S.A. 21-6814(d) allows a court to consider journal entries from Kansas and out-of-state convictions if the criminal history challenge can be answered on the face of the journal entries. If not, and a deeper inquiry is required, then we find K.S.A. 21-6814(d) limits the type of documents that can be considered to "complaints, plea agreements, jury instructions and verdict forms for Kansas convictions," along with any journal entries from the parties.

II. *Does the jurisdictional limit in the fourth sentence of K.S.A. 21-6814(d) violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution?*

After the State raised the issue of whether out-of-state documents could be considered under K.S.A. 21-6814(d) in its brief, we issued a show cause order requiring Emery to brief this issue. In his response, Emery argues that if we interpret K.S.A. 21-6814(d) to prohibit this court from taking judicial notice of out-of-state documents, then subsection (d) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The Equal Protection Clause prohibits the states from denying any person within their jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1. The Kansas counterpart to the Fourteenth Amendment's Equal Protection Clause is found in sections 1 and 2 of the Kansas Constitution Bill of Rights. *Farley v. Engelken*, 241 Kan. 663, 667, 740 P.2d 1058 (1987). The guiding principle of the Equal Protection Clause is

11

that similarly situated individuals should be treated alike. *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).

Kansas courts undertake a three-step inquiry when analyzing an equal protection claim. First, we consider whether the legislation creates a classification resulting in different treatment of similarly situated individuals. If the statute treats "'arguably indistinguishable'" people differently, we must then determine the appropriate level of scrutiny to assess the classification by examining its nature or the right at issue. *State v. LaPointe*, 309 Kan. 299, 316, 434 P.3d 850 (2019). The three levels of scrutiny available for that purpose include: rational basis review, intermediate scrutiny, and strict scrutiny. *Chiles v. State*, 254 Kan. 888, 891-92, 869 P.2d 707 (1994). Finally, we apply the appropriate level of scrutiny to the statute. *LaPointe*, 309 Kan. at 316.

Emery argues that if K.S.A. 21-6814(d) does not apply to out-of-state convictions, it would treat arguably indistinguishable individuals differently: (1) those convicted of a Kansas crime with out-of-state criminal history, and (2) those convicted of a Kansas crime with in-state criminal history. He claims the latter would have a K.S.A. 21-6814(d) mechanism to challenge their criminal history for the first time on appeal and the former would not. Now, this disparity does not apply to situations covered by the third sentence of subsection (d) since litigants can submit Kansas and out-of-state journal entries, but it would apply to the fourth sentence's limitations on the documents that can be considered in deeper inquiries. And in that case, we agree with Emery that the statute would operate to distinguish between the similarly situated individuals he identified.

Emery agrees that the lowest degree of scrutiny available, rational basis review, is the appropriate standard for his equal protection challenge. The question is then, if these two groups are similarly situated, can the statute survive a rational basis test? The answer is yes.

12

"'[U]nder the rational basis test, "a law is constitutional, despite some unequal classification of citizens, if the 'classification bears some reasonable relationship to a valid legislative objective.'"'

"'For a statute to pass constitutional muster under the rational basis standard, it therefore must meet a two-part test: (1) It must implicate legitimate goals, and (2) the means chosen by the legislature must bear a rational relationship to those goals. We have previously described it as "a very lenient standard" because, among other things,

"'"[t]he 'reasonable basis test' is violated only if the statutory classification rests on grounds wholly irrelevant to the achievement of the State's legitimate objective. The state legislature is presumed to have acted within its constitutional power even if the statute results in some inequality. Under the reasonable basis test, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."' [Citations omitted.]" *State v. Denney*, 278 Kan. 643, 651-52, 101 P.3d 1257 (2004) (quoting *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 197-98, 62 P.3d 236 [2003]).

Treating criminal history challenges which involve more complex fact-finding—such as those requiring interpretation of out-of-state documents which appellate courts may be unfamiliar with—differently than those which can be resolved by reading a journal entry on its face or interpreting Kansas documents which Kansas courts are more familiar with, is a legitimate goal and one which recognizes this court's limited fact-finding authority. And the means chosen by the Legislature—allowing offenders to use out-of-state journal entries when the challenge can be determined simply by reading those journal entries but not when they must delve deeper and interpret potentially unfamiliar out-of-state documents—bears a rational relationship to that goal. Thus we do not find that the limitation in the fourth sentence of subsection (d) violates the Equal Protection Clause.

III. *Does K.S.A. 21-6814(d) require offenders to show the journal entries provided on appeal were not attached to the criminal history worksheet?*

The State also argues Emery did not satisfy his burden to show error on appeal because he did not affirmatively claim the documents attached to his brief on appeal were "not originally attached to the criminal history worksheet." We asked Emery to address this issue in his response to our show cause order as well.

In response, Emery claims he designated a record on appeal by citing his PSI report in the record. He notes that when he requested additions to the record on appeal, he asked for full and complete versions of any PSI report to be included. And he correctly points out the PSI report is in the record and has no journal entries attached. Emery claims that without any evidence in the record to the contrary, this court can and should presume the Tennessee journal entry was not attached to the criminal history worksheet in Emery's case.

To begin, K.S.A. 21-6814(d) states the offender has the burden "of designating a record that shows prejudicial error" when challenging their criminal history for the first time on appeal. And it states that "[i]n designating a record that shows prejudicial error, the offender may provide the appellate court with journal entries of the challenged criminal history that were not originally attached to the criminal history worksheet." K.S.A. 21-6814(d). Nowhere does the statute say the offender must affirmatively prove the negative proposition that the journal entries were not originally attached, as the State contends. Emery designated a record which includes both his PSI report (which has no journal entry attachments) and the Tennessee journal entry he provides on appeal.

It is hard to imagine what more the State would have Emery do in this situation, and its proposition that Emery must also affirmatively state the obvious implication of the record he designated seems redundant and unnecessary. Emery cited a record which does

14

not contain his out-of-state journal entry, thereby allowing us to consider the one he provided for the first time on appeal.

IV. *Was Emery's criminal history improperly scored below?*

Whether a prior conviction or adjudication was properly classified as a person or nonperson crime for criminal history purposes raises a question of law subject to unlimited review. *Dickey*, 301 Kan. at 1034.

An out-of-state felony must be classified as a person offense if its elements necessarily prove that a person was present during the offense's commission. K.S.A. 21-6811(e)(3)(B)(ii). So if the elements alone do not demand proof that a person was present at the time of the offense's commission or otherwise require establishment of any of the circumstances set forth in K.S.A. 21-6811(e)(3)(B)(i), then the out-of-state felony must be classified as a nonperson felony. K.S.A. 21-6811(e)(3)(B)(iii).

Emery's Tennessee journal entry does not answer the question before us because it only reflects that Emery was convicted of violating Tenn. Code Ann. § 40-39-208. That statute is "divisible," meaning it includes multiple, alternative versions of the offense set forth in different subsections. To resolve this ambiguity, Emery attached a document to his appellate brief which he identifies as the indictment which led to his Tennessee conviction. This indictment charges Emery with violation of Tenn. Code Ann. § 40-39-208(9), failure to timely report to the designated law enforcement agency when the offender moves to another state. But because we find K.S.A. 21-6814(d) does not allow us to take judicial notice of this out-of-state document, we cannot consider it when resolving Emery's criminal history challenge.

While acknowledging that neither his PSI report nor the Tennessee journal entry specify which subsection of Tenn. Code Ann. § 40-39-208 Emery was convicted of

violating, Emery contends the absence of this information is irrelevant since none of the ways one can violate Tenn. Code Ann. § 40-39-208 require proof of any of the circumstances in K.S.A. 21-6811(e)(3)(B)(i) or (ii). He therefore claims K.S.A. 21-6811(e)(3)(B)(iii) demands his offense be classified as a nonperson felony.

The Tennessee statute Emery was convicted under provides:

"(a) It is an offense for an offender to knowingly violate any provision of this part. Violations shall include, but not be limited to:

(1) Failure of an offender to timely register or report;

(2) Falsification of a TBI registration form;

(3) Failure to timely disclose required information to the designated law enforcement agency;

(4) Failure to sign a TBI registration form;

(5) Failure to pay the annual administrative costs, if financially able;

(6) Failure to timely disclose status as a sexual offender or violent sexual offender to the designated law enforcement agency upon reincarceration;

(7) Failure to timely report to the designated law enforcement agency upon release after reincarceration;

(8) Failure to timely report to the designated law enforcement agency following reentry in this state after deportation; [and]

(9) Failure to timely report to the offender's designated law enforcement agency when the offender moves to another state." Tenn. Code Ann. § 40-39-208 (2010).

The State claims three of the ways Tenn. Code Ann. § 40-39-208 can be violated require proof that a person was present at the time of the offense's commission. If the State is correct, we could not vacate Emery's sentence because Emery's journal entry does not demonstrate which subsection he was convicted under nor can we take judicial notice of out-of-state documents under K.S.A. 21-6814(d). In essence, the calculation of Emery's conviction as a person felony would stand. K.S.A. 21-6811(e)(3)(B)(ii). While the State references the crimes set forth in subsections (a)(2), (a)(4), and (a)(6) of Tenn. Code Ann. § 40-39-208, it offers no explanation to support this argument. And we fail to

16

see how any of these crimes would necessarily occur in the presence of another person. Although the *completion* of these tasks might involve another person—for instance, if Emery was required to provide or sign the forms mentioned in (a)(2) and (a)(4) of Tenn. Code Ann. § 40-39-208 to or in the presence of another person, or if he was required to disclose his status to another person—we do not see how his failure to accomplish these tasks or the falsification of a form would require the presence of another person. Without further elaboration from the State, we cannot see how these subsections demand proof that a person was present at the time of the offense's commission or otherwise require establishment of any of the circumstances set forth in K.S.A. 21-6811(e)(3)(B)(i). And since we find that none of the elements of Tenn. Code Ann. § 40-39-208 require proof of any of the circumstances in K.S.A. 21-6811(e)(3)(B)(i) or (ii), we agree with Emery that his out-of-state felony must be classified as a nonperson felony. K.S.A. 21-6811(e)(3)(B)(iii).

Because we find that Emery's Tennessee conviction should have been counted as a nonperson felony, he is correct that his criminal history should have been scored as E instead of C. See K.S.A. 21-6809.

Sentence vacated and case remanded for resentencing.

17