NOT DESIGNATED FOR PUBLICATION

No. 116,135

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEREMY MICHAEL SPAUR,
*Appellant*.


MEMORANDUM OPINION

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed December 22, 2017. Affirmed in part, reversed in part, and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Barry K. Disney*, senior deputy county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., ATCHESON, J., and WALKER, S.J.

PER CURIAM: Jeremy Michael Spaur appeals his convictions for two counts of burglary, two counts of theft, possession of methamphetamine, and possession of drug paraphernalia. He claims (1) the district court erred by failing to hold a hearing on the voluntariness of his statement to police; (2) the district court erred by failing to give a limiting instruction after a witness testified Spaur was a meth user; (3) the district court erred by failing to give a unanimity instruction requiring the jury to agree whether Spaur committed theft of the vehicles or the property inside the vehicles; and (4) there was insufficient evidence to convict him of one count of theft. He also claims his sentence

1

became illegal on July 1, 2016, when the Legislature amended the juvenile adjudication decay provisions in K.S.A. 2016 Supp. 21-6810. We agree with Spaur that the district court failed to conduct a hearing on the voluntariness of his statement to police and remand the case to hold such a hearing. Otherwise, we conclude that the points raised on appeal by Spaur lack merit and therefore affirm on those issues.

FACTS

On January 28, 2015, Kerry Free drove his 2002 Dodge Ram to work in Manhattan, parked it, and left to go to a construction site. When he returned that night, his truck was gone. The next day, Free saw his truck parked in the Quality Inn parking lot. His tools, stereo system, and two firearms were missing. Free estimated the value of his truck to be over $1,000. He estimated the combined value of the items missing from his truck was over $1,000.

On February 16, 2015, Thomas Boyne took his 2004 Chevy Silverado to Briggs Auto in Manhattan to have work done on it. He left his truck and the keys with Briggs. The next day, Briggs called him and told him they could not find his truck on their lot. On February 18, 2015, a police officer located Boyne's truck less than half a block from Spaur's residence. When the truck was recovered, Boyne's stereo system and tool box were missing. Boyne found bolt cutters and a Dillons grocery receipt that did not belong to him in his truck. The Dillons purchase was made on February 17, 2015, at 4:41 a.m. Security video footage showed Spaur and Nicole Holt, Spaur's girlfriend, making the purchase at Dillons and then getting into Boyne's truck in the parking lot. Boyne estimated the value of his truck at $6,000.

Hong Zhang and his wife Ping He owned Hong's Auto Sales in Manhattan. On the morning of February 17, 2015, police called them because a window of the shop was broken. A Toyota Sienna minivan was missing from the lot. Documents from the

2

manufacturer for the minivan were in the glovebox when it was taken. A police officer located blood on the broken window frame. The blood from the window frame of Hong's Auto Sales matched the DNA of Kenneth Miller. Miller was a known associate of Spaur. On February 21, 2015, police located the minivan abandoned on private property. Police also obtained video footage of someone driving Boyne's truck close to Hong's Auto Sales from 4:08 a.m. to 4:25 a.m. on February 17, 2015, just before the truck was at Dillons. Zhang estimated the value of the minivan at $23,000.

On March 3, 2015, police officers searched Spaur's residence. Spaur and Holt lived in a camper in Manhattan behind the house of Vanessa Siders, a close friend of Spaur. The camper belonged to Spaur. An officer searched Siders' vehicle and found Free's amplifier and Boyne's subwoofer inside the trunk wired into Siders' vehicle. Spaur had installed the amplifier and subwoofer in Siders' vehicle. An officer located Boyne's amplifier, one of Free's firearms, and some other personal property belonging to Free in the camper.

Inside the camper, police also located a digital scale inside a black case on top of the oven. The scale had residue on it, which tested positive for methamphetamine in a field test. Police also located baggies containing residue and a burnt spoon in a black case on top of the stove. A forensic scientist with the Kansas Bureau of Investigation confirmed the residue tested positive for methamphetamine.

During the search, Spaur and Holt arrived at the residence. They were arrested. An officer found syringes on Holt's person. On Holt's phone, police found photos of two women holding guns and a man firing a gun. At least one of the guns in the photos belonged to Free. Police found documents for the Toyota Sienna stolen from Hong's Auto Sales in the vehicle that Spaur drove up in. After Spaur's arrest, he called someone from jail and said, "[G]et the fuck out of here, dude. Leave town. They got me."

3

The State charged Spaur with a total of seven felony counts:  one count each of burglary and theft of Free's Dodge Ram truck; one count of burglary of the Toyota Sienna minivan owned by Hong's Auto Sales; one count each of burglary and theft of Boyne's Chevrolet Silverado truck; one count of possession of methamphetamine; and one count of drug paraphernalia. A jury found Spaur not guilty of burglary of Free's truck, but he was found guilty on the remaining counts.

Spaur's criminal history included two person felonies. One of the person felonies was a juvenile adjudication for criminal threat from Riley County dated December 18, 2001. The court scored Spaur's criminal history as B and sentenced him to a total prison term of 34 months. Spaur has timely appealed from his convictions and sentences.

ANALYSIS

*The district court's failure to hold a* Jackson v. Denno *hearing on the voluntariness of Spaur's statement to an officer*

On appeal, Spaur first contends that the district court erred by allowing the presentation of testimony that Spaur admitted to being a meth user. This testimony was admitted over Spaur's objection that the statement was involuntary. He contends the court should have held a *Jackson v. Denno* hearing outside the jury's presence to determine whether his statement was voluntary. See *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). Spaur argues he was prejudiced and the appropriate remedy is to reverse his convictions for the possession of methamphetamine and drug paraphernalia charges.

At trial, the State asked Officer Robert Dierks if Spaur admitted to being a user of methamphetamine during the officer's interview of Spaur. Spaur objected to the question on the grounds it called for hearsay, the officer's statement lacked voluntariness, and was

4

outside the scope of permitted testimony. The district court overruled the objection. Officer Dierks answered yes, Spaur did admit to being a user of methamphetamine.

The State concedes that the district court erred by failing to consider the voluntariness of Spaur's statement outside the presence of the jury. But the State argues that the proper remedy is to remand for a posttrial hearing on the voluntariness of Spaur's statement.

During a trial, the defendant has the right to object to the introduction of any confession or admission by challenging the voluntariness of his or her statement. When there has been no hearing prior to trial on the issue of voluntariness, the defendant is entitled to a hearing outside the presence of the jury at the time of trial where the court determines if the confession or admission is voluntary. *State v. Miles*, 233 Kan. 286, 295, 662 P.2d 1227 (1983).

The State has the burden to prove the voluntariness of a confession by a preponderance of the evidence—that the statement was the product of the defendant's free and independent will. *State v. Dern*, 303 Kan. 384, 392, 362 P.3d 566 (2015). The district court looks at the totality of the circumstances surrounding the confession and determines its voluntariness by considering the following nonexclusive factors:  (1) the accused's mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language. *State v. Woods*, 301 Kan. 852, 867, 348 P.3d 583 (2015).

When reviewing the district court's decision regarding the suppression of a confession, this court reviews the factual underpinnings of the decision under a

substantial competent evidence standard and the ultimate legal conclusion is reviewed de novo. *Dern*, 303 Kan. at 392.

But here the district court did not conduct a hearing and instead simply denied Spaur's objection. Hence we have no facts to enable us to review whether Spaur's statement was voluntary.

Assuming for discussion purposes that Spaur's statement was involuntary, the erroneous admission of an involuntary confession must then be reviewed for harmless error. The State must show beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record, i.e., there is no reasonable possibility that the error affected the verdict. *State v. Aguirre*, 301 Kan. 950, 962, 349 P.3d 1245 (2015). But here, the State does not argue harmless error, contending instead that any discussion of prejudice is premature and this court should remand for a hearing.

In *Jackson v. Denno*, the Court held that Jackson was entitled to an adequate evidentiary hearing on the voluntariness of his confession but was not automatically entitled to a new trial. 378 U.S. at 394.

> "[I]f at the conclusion of such an evidentiary hearing in the state court on the coercion issue, it is determined that Jackson's confession was voluntarily given, admissible in evidence, and properly to be considered by the jury, we see no constitutional necessity at that point for proceeding with a new trial, for Jackson has already been tried by a jury with the confession placed before it and has been found guilty." 378 U.S. at 394.

Our Supreme Court followed this approach in *State v. Milow*, 199 Kan. 576, 590, 433 P.2d 538 (1967).

In *State v. Horn*, No. 114,078, 2016 WL 7494377, at *3, 5-6 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. __ (September 28, 2017), a panel of this

6

court found remand was the proper remedy when the district court refused to conduct a voluntariness hearing at the defendant's request and the panel found the admission could not be considered harmless error.

Accordingly, it is our clear duty to remand this case to the district court for the limited purpose of conducting a *Jackson v. Denno* hearing to assess the voluntariness of the statement Spaur made to police that he was a meth user. If the district court finds Spaur made the statement voluntarily, then the State properly introduced it at trial. In that case, Spaur's convictions for possession of methamphetamine and paraphernalia must stand.

If, however, the district court finds after the hearing that Spaur's statement was involuntary, it must then consider whether his admission could be excused as harmless error or whether the error would require a new trial on the counts of possession of methamphetamine and drug paraphernalia.

*The district court's failure to give a limiting instruction*

For the first time on appeal, Spaur argues that his agreement that he is a meth user made in response to the questioning by Officer Dierks amounts to other crimes evidence under K.S.A. 2016 Supp. 60-455 and should have resulted in the district court giving the jury a limiting instruction. In turn, he contends that the absence of a limiting instruction contaminated the jury verdicts finding him guilty of possession of methamphetamine and drug paraphernalia.

Spaur did not request a limiting instruction and none was given. A defendant can challenge the lack of a limiting instruction for prior crimes evidence even if the defendant did not object to the admission of the other crimes evidence at trial. But the failure to object raises the persuasive burden on appeal. The defendant must convince the appellate

7

court that the failure to give the instruction was clearly erroneous. *State v. Breeden*, 297 Kan. 567, 580-83, 304 P.3d 660 (2013). In *State v. Gunby*, 282 Kan. 39, 58, 144 P.3d 647 (2006), the court held that the district court must give a limiting instruction when prior crimes evidence is admitted to avoid error.

K.S.A. 2016 Supp. 60-455(a) lays out the scope of what constitutes other crimes evidence:

> "Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed *another crime or civil wrong* on *another specified occasion*." (Emphasis added.)

The State contends that Spaur's admission to being a user of methamphetamine did not implicate K.S.A. 2016 Supp. 60-455 because it was not "'another crime'" committed on "'another specified occasion,'" rather the drug use was interwoven with the commission of the charged crimes.

But the State's argument oversimplifies the issue as to whether a statement about a defendant's drug use falls within the ambit of K.S.A. 2016 Supp. 60-455. Our Supreme Court has made it clear that the key factor is the context of the admission.

In *State v. Boggs*, 287 Kan. 298, 317, 197 P.3d 441 (2008), the Kansas Supreme Court held that evidence of *prior* drug use is evidence of other crimes or civil wrongs that "fall squarely within the realm of K.S.A. 60-455." *Boggs* involved the nonexclusive possession of marijuana and drug paraphernalia. The court stated:

> "The district court's consideration of the admission of Boggs' statement regarding his previous marijuana use was similar to that used by our courts prior to *Gunby*, where

8

the courts would admit evidence of prior crimes or civil wrongs independently of K.S.A. 60-455. In *Gunby*, however, this court held 'unequivocally' that 'admissibility of any and all other crimes and civil wrongs evidence will be governed by K.S.A. 60-455.' Thus, *Gunby* held that there is always error when a district court 'neglect[s] to apply the safeguards . . . outlined to any other crimes or civil wrongs evidence.' [Citations omitted.]" 287 Kan. at 310.

In *Boggs*, an officer testified that Boggs admitted he smoked marijuana "about a month before the arrest." 287 Kan. at 302.

However, the court distinguished *Boggs* in *State v. Adams*, 294 Kan. 171, 273 P.3d 718 (2012). The *Adams* court stated:

"This limitation on the use of the prior crimes evidence arose in the context of showing that Boggs had used drugs *a month prior* to his arrest. Similarly, in the recent decision of *State v. Preston*, 294 Kan. 27, 272 P.3d 1275 (2012), where we applied *Boggs*, we held evidence of a *prior drug conviction* was inadmissible to prove constructive possession.

"In contrast, the evidence of Adams' drug use was use *at the time he was committing the crimes* for which he was charged. Both the version of K.S.A. 60-455 at issue in *Boggs* and the current version found at K.S.A. 2010 Supp. 60-455 apply to evidence 'the person committed another crime or civil wrong on *another* specified occasion.' (Emphasis added.) Hence, by its plain language, K.S.A. 60-455 does not apply to a circumstance involving the *same* occurrence. Further, admission of evidence of drug use is not contrary to the purpose of K.S.A. 60-455—the evidence is not admitted as propensity evidence but as circumstantial evidence showing a defendant had possession and control over the drugs. Consequently, many courts allow the admission of evidence establishing that a defendant had just used drugs or was under the influence of drugs at the time of an arrest because that evidence links the defendant with any drugs that are found in an area. [Citation omitted.]" 294 Kan. at 184.

Thus the question is whether Spaur's meth use was part of the same occurrence as the charged crimes of possession of meth and paraphernalia. See *Adams*, 294 Kan. at 184; accord *Breeden*, 297 Kan. at 577. But the answer is not clear.

Spaur's admission that he was a meth user was not linked to any time frame or "specified occasion." See K.S.A. 2016 Supp. 60-455(a). Thus it could arguably fall outside of K.S.A. 2016 Supp. 60-455(a). We note, however, that the *Boggs* court cautioned against admitting *prior* crimes evidence outside of K.S.A. 60-455.

Thus Spaur's admission is not like the statement in *Adams*, i.e., an admission that Spaur had just used drugs or was under the influence of drugs at the time of the arrest so as to link Spaur to the drugs found in his camper.

Based on current caselaw, we ultimately disagree with the State's interpretation that Spaur's statement to Officer Dierks was effectively an admission of drug use contemporaneous to the discovery of the methamphetamine and drug paraphernalia. We find that Spaur's admission to being a meth user falls squarely within the scope of K.S.A. 2016 Supp. 60-455, since allowing his statement into evidence depends completely upon Spaur having been a present user of methamphetamine, and thus implicates facts establishing a crime. An admission to being a user would also bear on motive for possessing methamphetamine, a permissible basis for admitting other crimes evidence under K.S.A. 2016 Supp. 60-455(b). In other words, why possess methamphetamine other than to use it or sell it?

But since we are remanding this case to the district court for purposes of holding a *Jackson v. Denno* hearing, we believe it is premature to determine if the district court's failure to give a limiting instruction at trial was clearly erroneous and thus requires reversal. But for the assistance of court and counsel we have some suggestions as to the proper way this issue should be handled at the time of the hearing following remand.

10

Should Spaur wish to pursue the absence of a limiting instruction as to his admission on remand, he should indicate this desire to the district court and the State at the time of the *Jackson v. Denno* hearing. If the court finds Spaur's admission to Officer Dierks to have been voluntarily made, and thus admissible, the court should then address the effect the absence of a limiting instruction would have had on the jury.

Because no request for a limiting instruction was made at trial, the district court should consider whether the omission was clear error using this test: Is the district court firmly convinced the jury would have reached a different verdict on the charges of possession of methamphetamine and drug paraphernalia had a limiting instruction been given? As the party claiming error, Spaur would bear the burden of satisfying that test. See K.S.A. 2016 Supp. 22-3414(3); *State v. Williams*, 295 Kan. 506, Syl. ¶ 5, 286 P.3d 195 (2012) (test for clear instructional error).

If the district court determines Spaur's admission to have been involuntary and its use at trial resulted in actual prejudice depriving Spaur of a fair trial, then the convictions must be reversed and the sentences vacated on the possession of methamphetamine and drug paraphernalia charges. Spaur would then be entitled to a new trial on those charges. If the admission was involuntary but its use at trial amounted to harmless error standing alone, the district court should then consider whether the combination of its use and the absence of a limiting instruction deprived Spaur of a fair trial on the possession of methamphetamine and drug paraphernalia charges.

*The district court's failure to give a unanimity instruction*

Spaur next contends the district court erred by failing to give a unanimity instruction requiring the jury to agree whether Spaur committed theft of the vehicles or the property inside the vehicles. He argues the jury was presented with multiple acts of theft that could have supported the convictions.

11

In a multiple acts case, several acts are alleged and any one of the acts could constitute the crime charged. This creates the potential for uncertainty as to whether the jury unanimously agreed on the act underlying each charge. *State v. De La Torre*, 300 Kan. 591, 595, 331 P.3d 815 (2014).

The framework and standard of review is as follows:

"'Unanimity instruction errors are reviewed under a three-part framework. First, the reviewing court determines whether a multiple acts case is presented. The threshold question is whether jurors heard evidence of multiple acts, each of which could have supported conviction on a charged crime. This is a question of law subject to unlimited review. If the case is a multiple acts case, the next question is whether error was committed. To avoid error, the State must have informed the jury which act to rely upon or the district court must have instructed the jury to agree on the specific act for each charge. Failure to elect or instruct is error. Finally, the court determines whether the error was reversible or harmless. When, as here, the defendant failed to request a unanimity instruction, the court applies the clearly erroneous standard provided in K.S.A. 2013 Supp. 22-3414(3). Under this test, to find the error reversible:

"'[a]n appellate court must be firmly convinced that under the facts the jury would have returned a different verdict if the unanimity instruction had been given.' [Citations omitted.]" *State v. Sprague*, 303 Kan. 418, 422-23, 362 P.3d 828 (2015).

Our Supreme Court has explained that acts are multiple acts if they are factually separate and distinct. Acts are factually separate and distinct if the acts were independent criminal acts that occurred at different times or the later act was motivated by a "'fresh impulse.'" *State v. Moyer*, 302 Kan. 892, 910, 360 P.3d 384 (2015). In addition, the following factors may be considered: (1) whether the acts occurred at or near the same time; (2) whether the acts occurred at the same location; (3) whether there was a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there was a fresh impulse motivating some of the conduct. 302 Kan. at 910.

12

But the court has recognized that there is no single test to determine whether conduct constitutes one act or separate and distinct acts. A test that applies to a charge of kidnapping may not apply to a charge of possession of a controlled substance. The courts must look at the facts and theory of the crime. *State v. Mattox*, 305 Kan. 1015, 1028, 390 P.3d 514 (2017).

Here, the State charged Spaur with felony theft of Free's 2002 Dodge Ram truck on January 28, 2015. When the truck was recovered, Free's tools, stereo system, and two firearms were missing. Free estimated the value of his truck over $1,000, and he estimated the combined value of the items missing from his truck over $1,000. In the search of Spaur's residence, police learned Spaur had installed Free's stereo amplifier in Siders' vehicle. Police found one of Free's firearms and other personal property in Spaur's camper.

The State also charged Spaur with felony theft of Boyne's 2004 Chevrolet Silverado from the premises of Briggs Auto on February 17, 2015. When Boyne's truck was recovered, his stereo system and tool box were missing. Boyne estimated the value of his truck at $6,000. There was no testimony on the value of his missing stereo system and tool box. In the search of Spaur's residence, police learned Spaur installed Boyne's subwoofer in Siders' vehicle. Police found Boyne's amplifier in Spaur's camper.

The district court did not instruct the jury on exactly what "property" Spaur was accused of stealing from either Free or Boyne other than the trucks themselves. The instructions just say "property" owned by Free (jury instruction 8) and Boyne (jury instruction 11).

In *State v. Littlejohn*, 298 Kan. 632, 658-59, 316 P.3d 136 (2014), the district court considered whether the taking of three pieces from an individual constituted multiple

13

acts. Littlejohn was accused of taking from Collins: keys, a Hummer motor vehicle, and credit cards. The Supreme Court said:

> "[T]he evidence presented at trial indicates that the three pieces of property were taken from Collins during a single course of conduct—the takings occurred at or near the same time; the takings occurred at the same location; there were no intervening events between the takings; and there is no evidence to suggest that different impulses motivated the individual takings. The aggravated robbery charge was not supported by multiple acts requiring a unanimity instruction. [Citation omitted.]" 298 Kan. at 658-59.

In *State v. Harris*, No. 112,883, 2016 WL 7325012, at *7 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* January 17, 2017, there was some evidence that Harris took two items from Lujan which would support a charge of robbery—money and a cellphone. The jury instruction simply stated Harris took "property" from Lujan. Harris argued on appeal that some jurors may have disbelieved the cell phone was taken because Lujan testified Harris texted her the next day. Other jurors could have disbelieved that Lujan gave Harris money because Lujan's jacket pocket from which she took the money was zipped up. The State admitted, and a panel of this court found, that there were multiple acts. 2016 WL 7325012, at *7.

When Spaur drove off with Free's and Boyne's trucks, he also drove off with all the property inside the trucks. The trucks and the items inside them were taken at the same time from the same location, and there was no intervening event between the takings.

However, Spaur abandoned the trucks within a day or two, but he kept the property found inside of them. Thus it is possible that Spaur had different motivations for taking the trucks versus the other property. Spaur's motivation for taking the trucks was not clearly shown at trial. In fact, during closing arguments the defense argued Spaur might have simply borrowed Boyne's truck.

14

Multiple acts instructions are only necessary where the facts show separate incidents that are factually and legally sufficient to satisfy all of the elements of the crime. *State v. Zabrinas*, 271 Kan. 422, 439, 24 P.3d 77 (2001). With respect to Boyne's property, the evidence did not show separate incidents sufficient to satisfy all of the elements of theft. There was no evidence regarding the value of the items stolen from Boyne's truck. Therefore the taking of the property from within Boyne's truck could not, on its own, constitute theft.

With respect to Free's property, the taking of the truck and the taking of the property within the truck each could have satisfied the elements of the crime charged because separate values were established for the Dodge Ram and for the property it contained. The State admits that it did not elect in its closing argument or in the jury instructions which property of Free's was the basis of the theft charges. Because of this uncertainty, we must deem the charges specific to Free's truck and its contents to be a multiple acts case. Hence, it was error for the district court not to give a unanimity instruction on that count of the complaint. But this does not end our inquiry. We must next determine if there was a unified defense with regard to Free's and Boyne's trucks, respectively.

If there is no unified defense, our courts do not tolerate verdict uncertainty. *State v. King*, 299 Kan. 372, 381, 323 P.3d 1277 (2014). "[W]hen no unanimity instruction has been requested, cases not containing a unified defense are reversed because the reviewing court is firmly convinced that there is a real possibility the jury would have returned a different verdict if the instruction had been given." *State v. Voyles*, 284 Kan. 239, 253, 160 P.3d 794 (2007). But defense strategy is merely one important and compelling factor in firmly convincing an appellate court that the jury would have reached a different verdict. *State v. Trujillo*, 296 Kan. 625, 631, 294 P.3d 281 (2013).

The defense with regard to Free's truck and its contents was a general denial, which constituted a unified defense. Spaur has not firmly convinced us that the jury would have reached a different verdict if the unanimity jury instruction had been given. Because of this, we are not convinced the omission of such an instruction as to Free's property constitutes reversible error.

By contrast, the defense was more than just a general denial with regard to Boyne's truck. Spaur was caught on camera getting into Boyne's truck. Spaur argued he could have just been borrowing the truck because he did not have one of his own. But, as stated above, the theft of Boyne's truck and the property inside of it were not multiple acts because no separate valuation was given for the contents of the truck. The jury did not buy the "borrowing" defense and found Spaur guilty of theft of Boyne's truck, which included its contents. Once again, there is no error in failing to give a unanimity instruction as to Boyne's property.

*Adequacy of the evidence as to the theft of Boyne's truck*

Spaur's next contention of error is closely related to his complaints about the lack of a unanimity instruction. Spaur contends that there was insufficient evidence to convict him of theft of the items inside Boyne's truck when it was taken from Briggs Auto because there was no evidence of the value of those items. Spaur asks the court to set aside the conviction for felony theft and remand with directions to resentence Spaur to Class A misdemeanor theft.

The State admits that, if the court finds that the taking of Boyne's truck and the taking of the property from inside the truck were multiple acts, then there was insufficient evidence that the property taken from within the truck exceeded $1,000.

16

As charged here, theft is obtaining or exerting unauthorized control over property (with a value of at least $1000, but less than $25,000) with intent to permanently deprive the owner of the possession, use or benefit of the owner's property. K.S.A. 2016 Supp. 21-5801(a)(1), (b)(3).

But as we discussed above on the issue of unanimity instructions, the taking of Boyne's truck and the property within the truck do not constitute multiple acts. Boyne testified that the value of his Silverado was $6,000, and he gave no separate valuation of the property inside it when it was taken. We find there was sufficient evidence to convict Spaur of felony theft of the truck and its contents.

*Application of 2016 juvenile adjudication decay provisions*

The parties agree that Spaur's sentence was legal at the time of sentencing in January 2016. However, Spaur contends that his sentence became illegal on July 1, 2016, when the Legislature amended K.S.A. 2016 Supp. 21-6810(d)(3)(B), providing that severity level 5 through 10 person juvenile felony adjudications now may decay from an offender's criminal history. The State argues that the changes do not apply retroactively. Spaur argues the Legislature expressed its clear intent for the changes to operate retroactively.

Spaur's offenses were committed in January, February, and March 2015. During that time period K.S.A. 2014 Supp. 21-6810(d)(3)(B) provided: "There will be no decay factor applicable for: . . . a juvenile adjudication for an offense which would constitute a person felony if committed by an adult."

Effective July 1, 2016, K.S.A. 2016 Supp. 21-6810(d)(3)(B) was amended to read: "There will be no decay factor applicable for: . . . a juvenile adjudication for an offense which would constitute a *nondrug severity level 1 through 4* person felony if committed

17

by an adult." (Emphasis added.) Along with this change, K.S.A. 2016 Supp. 21-6810(d)(4)(B) was amended to read:

> "(4) Except as otherwise provided, a juvenile adjudication will decay if the current crime of conviction is committed after the offender reaches the age of 25, and the juvenile adjudication is for an offense:
>
> . . . .
>
> (B) committed on or after July 1, 1993, which would be a nondrug severity level 5 through 10 [felony] . . . if committed by an adult."

"Decay factor" means that the offense is not considered in determining the offender's criminal history score. K.S.A. 2016 Supp. 21-6803(e); *State v. Smith*, 49 Kan. App. 2d 88, 90, 304 P.3d 359 (2013).

Spaur's criminal history was calculated as B based on two person felonies, one of which was a prior juvenile adjudication for criminal threat that was scored as a person felony. The juvenile adjudication for criminal threat was from Riley County dated December 18, 2001. Criminal threat is a severity level 9 person felony if committed by an adult. K.S.A. 2016 Supp. 21-5415(c)(1). Spaur was over the age of 25 at the time of his current offenses. Therefore, if we rule that the 2016 amendments to K.S.A. 21-6810 are truly retroactive, Spaur's juvenile adjudication for criminal threat would be declared retroactively decayed and he would be entitled to be resentenced without the criminal threat adjudication as part of his criminal history.

An "illegal sentence," as contemplated by K.S.A. 22-3504(1), is a sentence imposed by a court without jurisdiction; a sentence that does not conform to the statutory provision, either in the character or the term of authorized punishment; or a sentence that is ambiguous with respect to the time and manner in which it is to be served. *State v. Gray*, 303 Kan. 1011, 1014, 368 P.3d 1113 (2016). When a prior conviction has been misclassified, the resulting sentence is illegal. *State v. Dickey*, 305 Kan. 217, 220, 380

18

P.3d 230 (2016). A court may correct an illegal sentence "at any time." K.S.A. 22-3504(1). A defendant may challenge an illegal sentence even for the first time on appeal. *State v. Fisher*, 304 Kan. 242, 264, 373 P.3d 781 (2016). Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which an appellate court has unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016).

Resolution of this issue requires interpretation of K.S.A. 2016 Supp. 21-6810. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Vontress v. State*, 299 Kan. 607, 611, 325 P.3d 1114 (2014).

Criminal statutes and penalties in effect at the time of a criminal offense are controlling. *State v. Denney*, 278 Kan. 643, 646, 101 P.3d 1257 (2007). However, the Legislature has the power to reduce criminal penalties and provide for retroactive application, constrained only by the Constitutions of the United States and the State of Kansas. *State v. Standifer*, 24 Kan. App. 2d 441, 445, 946 P.2d 637 (1997). "The legislature has the exclusive role of providing for the punishment of convicted criminals. It follows that the legislature has the power to enact legislation reducing the punishment of convicted criminals or granting leniency to them. [Citation omitted.]" *Chiles v. State*, 254 Kan. 888, 897, 869 P.2d 707 (1994).

As a general rule, a statute operates prospectively unless (1) the statutory language clearly indicates the Legislature intended the statute to operate retrospectively or (2) the change is procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties. See *State v. Bernhardt*, 304 Kan. 460, 479, 372 P.3d 1161 (2016). Substantive laws define criminal acts and prescribe punishments. Procedural laws provide or regulate the steps by which a defendant is tried and punished.

19

*Tonge v. Werholtz*, 279 Kan. 481, 487, 109 P.3d 1140 (2005); *State v. Stegman*, 41 Kan. App. 2d 568, 572, 203 P.3d 52 (2009). Penalty provisions for a criminal offense are substantive, not procedural law. *State v. Martin*, 270 Kan. 603, 608, 17 P.3d 344 (2001).

The Legislature inserted retroactivity language into K.S.A. 21-6810 during its 2015 session along with the amendments made in response to *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). See L. 2015, ch. 5, § 1 (effective April 2, 2015). K.S.A. 2015 Supp. 21-6810(e) provided: "The amendments made to this section by this act are procedural in nature and shall be construed and applied retroactively."

The retroactivity language was not amended during the 2016 legislative session, but as noted above, the decay provision for juvenile adjudications was broadened to include all severity level 5 through 10 nondrug felonies, whether person or nonperson offenses. See L. 2016, ch. 97, § 1 (effective July 1, 2016).

Another panel of this court recently considered a virtually identical issue. In *Parker v. State*, No. 115,267, 2017 WL 947821, at *4 (Kan. App. 2017) (unpublished opinion), *rev. granted* 306 Kan. __ (September 29, 2017), defendant Parker was sentenced for second-degree attempted murder based upon a criminal history including prior juvenile adjudications for two person felonies, criminal threat, and unlawful voluntary sexual relations. Identically to Spaur in our case, Parker contended his sentence was illegal because these juvenile adjudications had decayed based upon the changes to K.S.A. 2016 Supp. 21-6810, which became effective July 1, 2016.

The *Parker* panel ultimately held that if the Legislature intended the decay provisions to operate retroactively, it would have used more specific language for such a broad policy change. The court noted that the language of the 2016 amendments was contradictory because the statute declared the changes to be procedural, but by declaring

20

them to be retroactive it had the actual effect of making substantive changes by reducing the length of sentences previously and lawfully imposed. 2017 WL 947821, at *4.

The panel observed that retroactive application of the 2016 amendments would entitle anyone to be resentenced who was serving a sentence based on a criminal history that included certain juvenile adjudications. But, unlike previous legislative enactments making retroactive changes resulting in reductions to criminal sentences, here the Legislature provided no timetable or procedure to undertake such a massive resentencing effort. The *Parker* court was convinced by the lack of any clear legislative expression that the 2016 amendments were to be considered retroactive and rejected the defendant's claims he was illegally sentenced. 2017 WL 947821, at *4. We find the *Parker* court's reasoning to be persuasive and note that at least one other panel of this court has followed it. See, e.g., *State v. Riley*, No. 115,976, 2017 WL 2838241, at *2 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* July 31, 2017.

If there was any doubt about the intent of the Legislature in the 2016 amendments, it was resolved when the Legislature once again amended the retroactivity provisions of K.S.A. 2016 Supp. 21-6810 during 2017 legislative session. Effective July 1, 2017, the 2016 rules for scoring juvenile adjudications enacted in 2016 were repealed. In their place, the following language reverting to the 2015 rules was adopted: "The amendments made to this section *by section 1 of chapter 5 of the 2015 Session Laws of Kansas* are procedural in nature and shall be construed and applied retroactively." (Emphasis added.) See L. 2017, ch. 92 § 5(e) (effective July 1, 2017).

Additionally, the 2017 Legislature rewrote the decay provisions for juvenile adjudications by adding an entirely new test:

21

"(5) A juvenile adjudication will not be considered and scored if:

(A) The current crime of conviction is committed at least five years after the date of the prior adjudication;

(B) the offender has no new adjudications or convictions during such five-year period; and

(C) the juvenile adjudication is for an offense that would be a nondrug severity level 5 through 10 felony, drug felony, nongrid felony or misdemeanor, if committed by an adult." L. 2017, ch. 92 § 5(d)(5).

Spaur would not qualify for resentencing under this new provision. His current crimes were committed 14 years after his juvenile adjudication. But his criminal history worksheet indicates he committed 16 crimes during that period.

Under either the 2016 or 2017 versions of K.S.A. 21-6810 we believe that Spaur's juvenile adjudication for criminal threat was properly considered and scored, albeit for different reasons in each case. Hence, we hold his sentences to be legal.

Affirmed in part, reversed in part, and remanded for a *Jackson v. Denno* hearing and further proceedings consistent with this opinion.

22